George TWIGG, III

v.

TOWN OF KENNEBUNK.

Supreme Judicial Court of Maine.

Argued March 27, 1995.

Decided July 25, 1995.

Alan E. Shepard (orally), Shepard & Read, P.A., Kennebunkport, for plaintiff.

William H. Dale (orally), Jensen Baird Gardner & Henry, Portland, Karen B. Lovell, Smith Elliott Smith & Garmey, P.A., Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

George Twigg, III appeals from the judgment of the Superior Court (York County, *Fritzsche, J.*) affirming the decision of the Kennebunk Zoning Board of Appeals [hereinafter "Board"] denying his request for a variance. We affirm the judgment.

In May of 1991, the Board granted then-owner John Downing a variance to build a single-family dwelling on the property in Kennebunk which is the subject of this appeal.[1] There is no evidence that Downing ever recorded the variance, which expired In November 1991. Downing subsequently applied for an identical variance, which the Board granted in October, 1992. Thereafter, Downing defaulted on his mortgage. Twigg purchased the property at a foreclosure sale in March, 1993.

After the second Downing variance expired in April, 1993, Twigg applied for a building permit to construct a single family dwelling identical in scope to the one previously proposed by Downing. The code enforcement officer denied his request. Twigg appealed that denial to the Board, which denied the variance because Twigg did not demonstrate that the land cannot yield a reasonable return unless a variance was granted and because the hardship was self-created. Twigg thereafter appealed to the Superior Court pursuant to 30–A M.R.S.A. § 2691(3)(G) (Pamph.1994). The court affirmed the decision. This appeal followed.

*Res judicata*

■ Twigg argues unpersuasively that the Board's approval of Downing's two prior applications for a variance required the subsequent approval of his identical application on the basis of *res judicata.* Pursuant to the

Kennebunk Zoning Ordinance, a variance expires within 6 months of the date on which it was granted if construction has not begun. Kennebunk, Me., Zoning Ordinance, art. VI, § 3(F).[2] In addition, the ordinance provides that the variance must be recorded within 30 days in order to be valid. *Id.* at § 4. Further, state law requires that:

> If the board grants a variance under this section, a certificate ... shall be prepared in recordable form. This certificate must be recorded in the local registry of deeds within 90 days of the date of the final written approval of the variance or the variance is void. The variance is not valid until recorded as provided in this subsection.

30–A M.R.S.A. § 4353(5) (Pamph.1994). There is no evidence on the record that the variances granted to Downing were recorded.

Twigg concedes that he was required to apply for a new variance because Downing's variances had expired. In addition, the variances granted to Downing conferred no rights and were void because of Downing's failure to record them. An expired and voided variance is comparable to a vacated judgment which has no *res judicata* effect.

*Denial of the variance*

■ A Board of Appeals may grant a variance only on a finding that the application of a zoning ordinance to the petitioner and his property would cause undue hardship as defined in 30–A M.R.S.A. § 4353(4):

> A. The land in question can not yield a reasonable return unless a variance is granted;
>
> B. The need for a variance is due to the unique circumstances of the property and

---

1. The Kennebunk Zoning Ordinance required that a single-family dwelling be located no less than 75 feet from the high water mark. Kennebunk, Me., Zoning Ordinance, art. VIII, § 13. Downing requested a building permit to construct a single-family dwelling only 42 feet from the high water mark. The Board granted a variance on the following conditions: the lot of 14,-600 square feet would be allowed 5,400 square feet of development for a one-story residence; the residence was to be no more than 24 by 28 feet, for a total living area of 673 square feet; the side yard setback on the northern boundary was set at 10 feet, making the total distance from the mean high tide mark 23.8 feet.

2. The ordinance provides that a variance, once issued and recorded:

    > shall expire if the work or change involved is not commenced within six months of the date on which the permit is granted, and if the exterior work or change is not substantially completed within one year....

    Kennebunk, Me., Zoning Ordinance, art. VI, § 3(F).

not to the general conditions of the neighborhood;

C. The granting of a variance will not alter the essential character of the locality; and

D. The hardship is not the result of action taken by the applicant or a prior owner.

A variance applicant must prove undue hardship by establishing all four of the preceding criteria. *Curtis v. Main,* 482 A.2d 1253, 1257 (Me.1984).

When the Superior Court acts as an intermediate appellate court, we independently examine the record and review the Board's decision for abuse of discretion, legal error, or findings unsupported by substantial evidence in the record. *Town of Hartford v. Bryant,* 645 A.2d 18, 19 (Me.1994). As the party bearing the burden of proof before the Board, Twigg must show on appeal that the evidence compelled the Board to grant him a variance. *Rancourt v. Town of Glenburn,* 635 A.2d 964, 965 (Me.1993). We may not substitute our judgment for that of the Board. The Board's decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it. *Mack v. Municipal Officers of Town of Cape Elizabeth,* 463 A.2d 717, 720 (Me.1983).

### Self-created hardship

The Board ruled that there was a self-created hardship because "the applicant knew, prior to his purchase, of the complications and prohibitions attached to this property and its use...." The Board's conclusion that knowledge of zoning restrictions prior to the purchase of property is tantamount to self-created hardship is an error of law. While it was the general rule at one time "that one who purchased property with

actual or constructive knowledge of the restrictions of a zoning ordinance was barred from securing a variance," the rule has since been "altogether abandoned or modified into nonexistence" in most jurisdictions.[3] 3 Rathkopf, *The Law of Zoning and Planning* § 38.06(2) (1988) [hereinafter Rathkopf at ——]; *see also National Boatland, Inc. v. Farmington Hills Zoning Bd. of Appeals,* 146 Mich.App. 380, 380 N.W.2d 472, 476 (1985). The modern rule provides that a purchase with knowledge does not preclude the granting of a variance and, at most, is considered a nondeterminative factor in consideration of a variance. Rathkopf at § 38.06; *see also Nammack v. Krucklin,* 149 A.D.2d 596, 540 N.Y.S.2d 277 (1989); *Board of Adjustment v. Shanbour,* 435 P.2d 569, 575 (Okla.1967).

The treatises have interpreted Maine law as consistent with the "old rule." *See, e.g.,* Rathkopf at § 38.06 n. 20. The genesis for this position is *Sibley v. Town of Wells,* 462 A.2d 27 (Me.1983), in which we relied on 3 R. Anderson, *American Law of Zoning* § 18.42 (2nd ed. 1977), for the proposition that "when a landowner purchases land with actual or constructive knowledge of the zoning restrictions, he may not be granted a variance on the grounds of undue hardship." *Sibley,* 462 A.2d at 31. In fact, Anderson articulated a rule far less absolute than the categorical rule suggested by the partial quote from Anderson in *Sibley.* Anderson stated then, as it does now:

A person who purchases land with knowledge, actual or constructive, of the zoning restrictions which are in effect at the time of such purchase, is said to have created for himself whatever hardship such restrictions entail. *When he seeks administrative or judicial relief from such self-created hardship, he encounters resistance*

---

**3.** As Rathkopf elaborates:

Two basic faults in the old rule have been recognized, and these faults are the reasons behind its demise. First, since hardship can neither be measured by the cost of the property to the owner nor by the difference between the value the land has as restricted and the value it would have if the variance were granted, there is no danger that a knowledgeable purchaser could create evidence of hardship by paying an excessive purchase price for property that is

restricted. Second, the old rule failed to acknowledge that if the prior owner would have been entitled to a variance at the time the zoning ordinance restriction was enacted, the right is not lost to a purchaser simply because he bought with knowledge of the regulation. In other words, because a purchaser of property acquires no greater right to a variance than his predecessor, he should not be held to acquire less.

Rathkopf at § 38.06(2).

*which varies in intensity with the kind of relief sought and the forum whose jurisdiction he invokes.... In general, the fact that a landowner invited trouble by purchasing land subject to use restrictions which cripple his enjoyment of it, is not a bar to an action to determine whether such restrictions, as they apply to particular land, are confiscatory and therefore unconstitutional. Most courts, however, say that such an owner is in a poor position to complain, and that the fact of purchase with knowledge of restrictions will be considered in determining whether his basic rights are infringed by the regulations.*

Anderson at § 18.42 (emphasis added); *see also* 3 R. Anderson, *American Law of Zoning* § 20.44 (3d ed. 1986) [hereinafter Anderson at ——].[4] Both the Anderson and Rathkopf treatises indicate that the modern concept of self-created hardship has been refined to mitigate the harshness of the old rule.

Our review of the line of cases beginning with *Sibley* reveals that the treatises are only partially correct in. stating that Maine has followed the old rule on self-created hardship. In *Sibley,* the plaintiffs owned two contiguous lots. They purchased one lot [hereinafter "lot 1"] before the other [hereinafter "lot 2"]. At the time they purchased lot 2, it did not conform to the minimum lot size requirement of the town zoning ordinance, and it was subject to a deed restriction that required any structure built on it to be a minimum of 26 feet wide. The combination of sideline setback requirements and deed restrictions made it impossible to build a structure on the lot in compliance with the town's zoning ordinance.

Nonetheless, the Sibleys poured a concrete foundation on lot 2. After the town code enforcement officer served them with a notice of violation of the zoning ordinance, they sought a variance for both lots. The variance was denied as to sideline setbacks and approved contingent on the plaintiffs meeting certain conditions on the lot size require-

ments. The plaintiffs did not appeal the decision. Several months later, the Sibleys applied for another variance solely for lot 2. The Board rendered a decision identical to the first.

In their appeal, the Sibleys argued that they would suffer "unnecessary hardship" because, without the variance and the ability to build their house on lot 2, the property would be worth only $1,000 instead of the $4,200 they paid for it. They further asserted that the hardship was not self-created because the lot had been established before the zoning ordinance had been enacted.

In affirming the denial of the variance, we stated that "when a landowner purchases land with actual or constructive knowledge of the zoning restrictions, he may not be granted a variance on the grounds of undue hardship." *Sibley,* 462 A.2d at 31. We predicated our statement, in part, on the fact that the Sibleys could have combined lots 1 and 2 and built a house in conformance with the zoning ordinance. Instead, they poured a foundation on lot 2, in violation of the zoning ordinance. Their own actions, in combination with actual or constructive knowledge of the applicable zoning restrictions, resulted in the need for a variance. Accordingly, *Sibley* stands for the proposition that knowledge of zoning restrictions prior to purchase of the affected property, in combination with other factors, may result in a self-created hardship.

In *Your Home, Inc. v. Town of Windham,* 528 A.2d 468 (Me.1987), we affirmed the Board's denial of a variance to a developer. *Your Home* involved a plaintiff who purchased a parcel of land and applied one month later for subdivision approval for a mobile home park. The parcel of land was 12.84 acres in area with 248.77 feet of frontage on the Chute Road in Windham. Your Home proposed dividing the parcel into fourteen lots to be leased to mobile home owners. Another lot was to be set aside for use as a leach and drainage field. The park would be served by a single street connecting the park to the Chute Road. Because the Windham Subdivision Ordinance required a subdivision

4. Although Anderson refers to use restrictions, the logic of the analysis also applies to the area restrictions of a zoning ordinance.

such as that proposed by Your Home to have two street connections, the company applied for a variance.

In affirming the Board's decision to deny the request for a variance, we observed that "a multitude of reasonable uses are permitted on the ... parcel." *Your Home*, 528 A.2d at 471. For example, the property could be developed for two single-family homes. We concluded that, by applying for a variance for a prohibited use, when the land was capable of supporting a conforming use, any hardship imposed was self-created. Like *Sibley, Your Home* stands for the proposition that a landowner's knowledge of zoning restrictions prior to the purchase of property is one factor to consider in evaluating the self-created hardship element of the variance test.

In *Bishop v. Town of Eliot*, 529 A.2d 798 (Me.1987), the consolidated appeal involved two adjacent "backlots," *i.e.*, lots situated behind other lots and having no street frontage. A narrow right-of-way served each lot, making a nearby street accessible. Bishop and Saklad applied for a building permit to construct a residence on one of the backlots. The permit was denied because the right of way serving the lot was too narrow. Subsequently, Bishop and Saklad filed an application for a variance and, on the same day, entered into a purchase and sale agreement for the lot. The Board denied their request for a variance.

Pending an appeal of the denial of the variance to the Superior Court, Bishop acquired the property in her own name and Saklad was dismissed from the appeal.[5] Saklad, thereafter, purchased the other backlot and requested a variance to build a single-family home on it. After a hearing, the Board granted the variance to Saklad. The abutters sought review before the Superior Court, which ordered the appeal consolidated with that of Bishop. It subsequently affirmed both decisions of the Board.

Relying on *Sibley*, we held that Bishop and Saklad had knowledge of the zoning ordinance requirements for the width of the right-of-way prior to purchase and, therefore, any hardship was self-imposed. Since Bishop and Saklad took no actions other than purchase of the properties involved with actual or constructive knowledge of the thirty-foot right-of-way zoning restriction, and since their lots could not be developed without the variances, *Bishop* arguably stands for the proposition adopted by the Board in this case that actual or constructive knowledge of the restrictions of a zoning ordinance prior to purchase of the property is tantamount to a self-created hardship. We now reject that broad proposition in *Bishop* and return to the meaning of self-created hardship intended in *Sibley* and *Your Home*, namely, that actual or constructive knowledge of the zoning ordinances prior to purchase of the property may be considered by the Board as a factor in evaluating self-created hardship, but it is not determinative of such hardship. With this clarification, we join the ranks of most jurisdictions.

Because the Board applied the old rule of self-created hardship, we conclude that it erred in determining that Twigg created his own hardship. The Board found self-created hardship on the sole basis of Twigg's knowledge prior to purchase that the zoning ordinance placed restrictions on the development of the property. Twigg's knowledge of these restrictions should have been considered only as a factor in determining self-created hardship.[6]

### Reasonable return

█ The evidence does not compel the conclusion that the Board erred in determining that Twigg had failed to show he could not get a reasonable return from the property, *i.e.*, "the *practical loss of all beneficial use* of the land." *Greenberg v. DiBiase*, 637 A.2d 1177, 1179 (Me.1994) (emphasis added). "A zoning regulation imposes unnecessary

---

5. There is a suggestion in the facts of *Bishop* that the petitioners were consciously attempting to avoid zoning restrictions. That avoidance was clear in the *Sibley* and *Your Home* cases.

6. For example, under the flexible rule of self-created hardship, the fact that Twigg knew that a variance identical to the one he requested had been twice before granted might have mitigated the effect of his knowledge of zoning restrictions.

hardship if property to which it applies cannot yield a reasonable return from any permitted use." Anderson at § 20.17. "Reasonable return" is not tantamount to "maximum return." *Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me.1991).

Twigg failed to establish that the property may be used only for residential purposes and that he, therefore, could derive no beneficial use from it. *See, e.g., Greenberg v. DiBiase,* 637 A.2d at 1179; *Marchi v. Town of Scarborough,* 511 A.2d 1071, 1073 (Me. 1986). The record does not establish that the commercial purposes for which the property has historically been used are no longer permitted. The record does indicate that Twigg has used the property for recreational boating activities. He stated publicly his intent to use the building as a boathouse. Although Twigg has since characterized this comment as a smoke screen for his real intention of asking for a variance to build a residence, he has, in fact, used the property for recreation, *i.e.,* docking his rowboat at the waterfront and storing oars and other marine equipment in the building on the property. There is nothing in the record to indicate Twigg's recreational use of the property cannot continue in the future. Such use is relevant to the reasonable return analysis. *See Hall v. Board of Envtl. Protection,* 528 A.2d 453, 455 (Me.1987) (inability to construct residence on ocean front lot did not constitute inability to yield reasonable return where availability of water, sewer and electrical services made it feasible to connect a camper to utility services).

The entry is:

Judgment affirmed.

All concurring.