STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, SS                                   DOCKET NOS.
                                                 AP-05-054
                                                 AP-05-055

                                                 R~' -(\~ -/|a|o|o(o

HENRY W. SAUNDERS,
MARJORIE H. SAUNDERS,
LESLIE S. SAUNDERS and
KENNETH W. SAUNDERS

        Plaintiffs
                                                 CONSOLIDATED ORDER
        vs.                                      ON DEFENDANTS'
                                                 MOTIONS TO DISMISS
                                                 80B APPEALS

TOWN OF STANDISH

        Defendant

------------------------------------------------

SYLVIA L. THOMPSON, TRUSTEE

        Plaintiff

        vs.

TOWN OF STANDISH

        Defendant

        Before the court are respondent Town of Standish's ("Town") motions to

dismiss plaintiffs Henry, Marjorie, Leslie and Kenneth Saunders' and plaintiff

Sylvia Thompson, Trustee's (collectively, "Plaintiffs") 80B appeals for lack of

jurisdiction. On December 21, 2005, the court granted the Town's unopposed

motion to consolidate these appeals for the limited purpose of deciding these

motions.

## BACKGROUND

        Plaintiffs challenge their April 1, 2004 tax assessment on residential

properties located on Sebago Lake in Standish. Following denial of their tax

1

abatement applications, Plaintiffs appealed to the Board of Assessment Review, ("BAR") which conducted hearings on July 13, 2005. At the conclusion of the hearings, the BAR voted to grant a partial tax abatement, reducing the assessment on the Saunders property from $1,273,200 to $1,100,000 and on the property held in trust by Thompson from $1,348,700 to $1,140,000. Plaintiffs were present at these hearings and received actual notice of the BAR decisions on July 13, 2005. The BAR issued written decisions on both appeals dated July 14, 2005, and mailed them to Plaintiffs. Plaintiffs filed appeals of the BAR decisions on August 16, 2005.

## DISCUSSION

The Town claims that, because Plaintiffs filed their 80B appeals 34 days after the July 13 hearings, this court lacks jurisdiction to hear their appeal. It is well established that time limits to appeal are jurisdictional. *See e.g. Persson v. Dept. of Human Services*, 2001 ME 124, ¶ 9, 775 A.2d 363, 365. 36 M.R.S.A. § 843, which governs appeals from property tax assessments, states:

> [E]ither party may appeal from the decision of the board of assessment review directly to the Superior Court, in accordance with Rule 80B of the Maine Rules of Civil Procedure. If the board of assessment review fails to give written notice of their decision within 60 days of the date the application is filed, unless the applicant agrees in writing to further delay, the application shall be deemed denied and the applicant may appeal to Superior Court as if there had been a written denial.

M.R.Civ.P. 80B(b) states, "the time within which review may be sought shall be as provided by statute, except that if no time limit is specified by statute, the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought." The Town points out that Plaintiffs had actual notice of the Town's action on July 13, 2005, and asserts that, accordingly, the 30-day

2

appeals period began to run from that date. Looking solely at the language of Rule 80B, the appeals period would seem to commence on July 13, as the general meaning of "notice" includes actual notice. *See Rowe v. Hayden*, 149 Me. 266, 271 (Me. 1953); *see also* Garner, Bryan A., ed. *Black's Law Dictionary*, 1087 (7th ed., 1999) (stating, "A person has notice of a fact or condition if that person (1) has actual knowledge of it...").

Plaintiffs maintain, however, that § 843, from which Rule 80B derives its authority for setting the appeals period, indicates that "notice" in the context of a BAR decision is to be "written." They then point out that they received written notice through the mail, dated July 14, 2005. They conclude that, pursuant to M.R.Civ.P. 6(c), they have 33 days from the date of the *written notice* to initiate their appeal.

M.R.Civ.P. 6(c) states:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Plaintiffs' argument is compelling in light of the specific language of § 843. The Law Court has stated that, in deciding when an appeals period begins to run, the court must first take a close look at the language of the governing statute. *See Vachon v. Town of Kennebunk*, 499 A.2d 140, 141 (Me. 1985); *see also Woodward v. Town of Newfield*, 634 A.2d 1315, 1317 (Me. 1993). *Vachon* and *Woodward* construed statutes that required any appeal to be taken "within 30 days after the decision is rendered." *See id. Vachon* noted that the critical word in the governing statute was "rendered" and stated, "a decision is 'rendered' when the tribunal makes, gives, or delivers it." *See Vachon*, 499 A.2d at 141. It concluded,

3

therefore, that the appeals period began to run as to the date the zoning board of appeals had heard and voted on the plaintiff's appeal. *Id.* In support of this interpretation, the court noted that, if the legislature had intended to delay the start of the appeal period until the appellant had received notice of the zoning board's decision, it could have stated, as it has in statutes governing appeals from state administrative agencies, that the appealing party would have to appeal "within 30 days after receipt of notice." *See id.*

The court also looked to the circumstances of a zoning appeal to explain why the appeals period should run from the date of the hearing and oral decision as opposed to the date of the written decision. In zoning cases, any party to the proceeding, including abutters, may appeal the zoning board's decision, however, only the petitioner and certain municipal agencies must be given "notice" of the decision. *See id.* The court concluded from this that, "the limitation on the notice required ... negates by clear implication any suggestion that receipt of notice of a zoning board's decision is a prerequisite for the start of the appeal period." *Id.*

Both the statutory language and the circumstances of this appeal differ from *Vachon*. Here, "notice" is the crucial statutory language, not the time at which the decision is rendered. Although § 843 does not clearly state that an appeal must be taken "within 30 days of receipt of notice," it does provide that, in the absence of "written notice of their decision," the application will be deemed denied 60 days after the application has been filed. Additionally, in the context of a tax assessment appeal, the only parties with an interest in the action are the applicant and the municipality. There are no third party appeal rights, and there is, consequently, no need for the date of the public hearing and vote to

4

serve as the date from which any interested party might appeal. Although ordinarily, the meaning of "notice" under Rule 80B would include actual notice, it is more consistent with the language of § 843, as well as the circumstances of a tax abatement appeal, to here interpret the meaning of "notice" as "written notice."

Written notice of the BAR's decision was sent via mail to Plaintiffs on July 14, 2005. Under § 843, Plaintiffs have the right to appeal the BAR's decision after written notice of the appeal. Written notice, in the form of "a notice" was served by mail on Plaintiffs. Thus, under Rule 6(c) and 80B, Plaintiffs had 33 days from July 14 to file their appeals. Plaintiffs' August 16 appeals are timely, therefore the court has subject matter jurisdiction to hear them.

The entry is:

> Defendant Town of Standish's motions to dismiss Plaintiffs 80B appeals are DENIED. The consolidation of AP-05-054 and AP-05-055 is terminated, and each case will hereafter be separately heard and decided on the merits.

Dated at Portland, Maine this _26th_ day of _January_, 2006.

_____
Robert E. Crowley
Justice, Superior Court

5

Date Filed __AUGUST 16 2005__    __CUMBERLAND__    Docket No. __AP-05-54__

County

Action _____80B APPEAL_____

HENRY W SAUNDERS
MARJORIE H SAUNDERS
LESLIE S MCMANUS
KENNETH W SAUNDERS

vs.

THE TOWN OF STANDISH, A MAINE MUNICIPAL
CORPORATION

Plaintiff's Attorney                     Defendant's Attorney

RICHARD N BRYANT ESQ                     SALLY DAGGETT, ESQ.
20 YORK STREET                           PO BOX 4510
PORTLAND MAINE 04101                     PORTLAND, ME 04112-4510
(207)871-7500                            775-7271.

Date of
Entry

2005

STATE OF MAINE
CUMBERLAND, ss.

HENRY W. SAUNDERS, et al.

Plaintiffs

v.

TOWN OF STANDISH

Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-54
REC. CUM-10/11/2006

ORDER ON 80B APPEAL

DONALD L. GARBRECHT
LAW LIBRARY

DEC 08 2006

Before the Court is Plaintiffs Henry W. Saunders, Marjorie H. Saunders, Leslie S. McManus and Kenneth W. Saunders's ("Plaintiffs") appeal, pursuant to 36 M.R.S.A. § 843(1) and M.R. Civ. P. 80B of the Town of Standish ("Town") Board of Assessment Review's ("Board") decision to grant Plaintiffs only a partial abatement to their April 1, 2004 property tax assessment.

## BACKGROUND

Plaintiffs own property located at 15 Long Point Road in Standish ("Property"). Long Point Road is a private road providing access to six residences. A locked steel gate with posted "no trespassing" and "private" signs prevents access by non-residents. The Property is six acres in size on a peninsula with 380 feet of frontage on Sebago Lake. The Property is separated from the water by a bank approximately 80 feet in height. While this restricts access to the water, it provides an elevated view over Sebago Lake and mountains in the distance. The Property is improved with a 2,528 square foot single family residence with an attached garage, a 1,069 square foot guest house and various outbuildings, including a second garage and a tennis court.

1

The Town completed a town-wide revaluation of property value assessments on April 1, 2004. As part of that revaluation, the Town assessed the Property's value at $1,273,200. In calculating this total, the Property's land was assessed at $943,900 while its buildings were assessed at $329,300. These figures were based on the sale of three waterfront parcels, one of which occurred in December 2004 and the other two of which occurred in 2001, and was calculated by the Town's valuation services contractor, Vision Appraisal Technology ("Vision"), using its proprietary computer program.

On March 15, 2005, Plaintiffs filed a tax abatement application for the Property with the Town Assessor, Mr. Peter Arnemann ("Assessor"). In support of this application, Plaintiffs engaged Lisa Carey, RA[1] of Beacon Appraisal Company, Inc. Ms. Carey produced an appraisal valuing the Property at $796,000 ("Beacon Appraisal") based on sales of four residences occurring within ten months of the April 1, 2004 appraisal date. In response to Plaintiffs' tax abatement application, the Assessor suggested a compromise assessment halfway between the two appraisals of $1,034,600. Plaintiffs declined this offer and the Assessor subsequently denied their abatement request. On May 26, 2005, Plaintiffs submitted their abatement request to the Board.

The Board conducted a hearing on Plaintiffs' tax abatement appeal on July 13, 2005. Plaintiffs presented oral testimony, photographs and written evidence on the nature of the Property. Plaintiffs also presented the Beacon Appraisal,

---

[1] "RA" stands for "Registered Appraiser Trainee." This designation applies to appraiser trainees who may "appraise for a fee or other valuable consideration under the direct supervision of a licensed real property appraiser, a certified general real property appraiser or a certified residential real property appraiser those properties that the supervising appraiser is permitted to appraise." 32 M.R.S.A. § 14033(1).

2

though Ms. Carey did not attend the hearing or otherwise submit material in support of her $796,000 appraisal. The Assessor presented his own oral testimony and documentary evidence as well as oral testimony from Kenneth Rodgers of Vision Appraisal. Mr. Rodgers assessed the Property's value at $1,100,000 as of April 1, 2004 ("Vision Appraisal").

At the conclusion of the hearing, the Board voted unanimously to grant a partial tax abatement to Plaintiffs. The Board determined that the April 1, 2004 assessed value of the Property should be $1,100,000, resulting in a reduction in actual tax liability of $1,861.90 versus the original assessment. The Board made this determination based on the Vision Appraisal stating that, even though the comparable properties used to reach this appraisal were slightly older than those used in the Beacon Appraisal, they were time adjusted to account for this difference. Further, the properties used in the Vision Appraisal were more comparable to the Property. Specifically, the Vision Appraisal's comparables were all "high bank properties" like the Property in this case, while the Beacon Appraisal's comparables included properties the Board did not believe were truly similar to the Property including one that was located in Sebago Lake Basin as opposed to on Sebago Lake, and another that was located on Highland Lake in Bridgton. (R. at 65-66.) Plaintiffs timely filed this appeal of the Board's decision.

## STANDARD OF REVIEW

The Court reviews a zoning board's decision for abuse of discretion or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. Substantial evidence is evidence that is sufficient for a board to have reasonably found the facts as it did. *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990). The burden of persuasion is on the

3

party challenging a board's decision to show that the evidence compels a different result. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (1996). The Court must not substitute its judgment for that of a board. *Id.* Further, a board's "decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Id.*

In seeking a tax abatement, the taxpayer bears the burden of proving that an assessment is "manifestly wrong." *Cent. Me. Power Co. v. Town of Moscow*, 649 A.2d 320, 323 (Me. 1994). It is well established that in order for a taxpayer to prevail in challenging a board's assessment, "the taxpayer must show one of three things: (1) that the judgment of the assessors was irrational or so unreasonable in light of the circumstances that the property is substantially overvalued and an injustice results; (2) that there was unjust discrimination; or (3) that the assessment was fraudulent, dishonest, or illegal." *McCullough v. Town of Sanford*, 687 A.2d 629, 630 (Me. 1996).

## DISCUSSION

Under the Maine Constitution, "all taxes upon real and personal estate . . . shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8. "Just value" is the equivalent of "market value." *Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 389 (Me. 1981). In determining "just value," assessors must "consider all relevant factors, including without limitation, the effect upon value of any enforceable restrictions to which the use of the land may be subjected, current use, physical depreciation, sales in the

secondary market, functional obsolescence and economic obsolescence." 36 M.R.S.A. § 701-A.[2]

Plaintiffs argue at length that the Assessor unquestioningly accepted Vision's original assessment and then "ignored" the Beacon Appraisal in making his compromise offer. As an initial matter, there is no evidence that the Assessor "ignored" the Beacon Appraisal. Rather, he was presented with this appraisal by Plaintiffs, was not convinced that it was correct and offered a compromise settlement halfway between the original assessment and the Beacon Appraisal. In any event, it is the Board's decision that is the subject of this appeal.[3] Therefore, whether Plaintiffs are successful must turn on whether the record evidence compels a result different from the partial abatement granted by the Board, not on any perceived ill treatment by the Assessor.

The more substantive of Plaintiffs' arguments addresses the relative comparability of the properties used in reaching the Beacon Appraisal versus

---

[2] Plaintiffs repeatedly argue that because the Assessor did not give weight to their appraisal, he failed to consider "all relevant factors" as required by 36 M.R.S.A. § 701-A. A taxpayer hired appraiser's assessment does not appear to be the kind of factor the legislature was concerned with in mandating that assessors consider "all relevant factors." Rather, the non-exclusive list of statutory factors evidences a concern that appraisers consider all factors affecting a property that are relevant to its value, not all opinions on how those factors should be interpreted. Plaintiffs also frame the failure of the assessor to consider their appraiser's report as an "illegal" failure to give weight to "all relevant factors." "An illegal assessment is generally understood as one that exceeds the bounds of the taxing entity's authority." *Yusem v. Town of Raymond*, 2001 ME 61, ¶ 14 n.12, 769 A.2d 865, 872. Plaintiff has made no such allegation. Therefore, this argument is not properly analyzed as a question of illegality.

[3] "[I]n abatement proceedings, the [Board] undertakes an independent review of value, but does so only if the taxpayer makes his threshold showing that the assessment is manifestly wrong. Because the [Board] undertake[s] an independent analysis of value if the taxpayer meets the preliminary burden, we review the actions of the [Board]." *Yusem*, 2001 ME 61, ¶ 7 n.5, 769 A.2d at 869 (internal citations omitted). In the present case, the Board found that Plaintiffs proved their property was overvalued by the Assessor and conducted its own independent analysis in reaching a new assessment. (R. at 65-66.)

those used in the Vision Appraisal. Plaintiffs argue that because the four properties used in the Beacon Appraisal were all sold in the same year as the assessment date while two of the three properties used in the Vision Appraisal were sold in 2001 the Beacon Appraisal is more reliable. Defendant argues that, although the properties used in the Beacon Appraisal were sold more recently than those in the Vision Appraisal, there were numerous deficiencies that nonetheless made the Beacon Appraisal unreliable. Specifically, none of the properties used were "high bank" properties, only one was as large as Plaintiffs', none of the comparables had the same view over Sebago Lake as the Property, and two of the properties were located in Sebago Lake Basin, an area with lower property values than those on Sebago Lake. In contrast, Plaintiff notes that the three properties relied upon by the Vision Appraisal were all "high bank" properties on Sebago Lake with one main residence and at least one guest cottage. Further, the Board explicitly took into account that the properties used in the Vision Appraisal were older than those used in the Beacon Appraisal and stated that their sale values "were appropriately time adjusted." (R. at 66.)

From the evidence presented, it cannot be said that the Board's decision was flawed, much less that the record compels a different result. Although the property sales used in the appraisal relied upon by the Board were older than those used in the Beacon Appraisal, this is not the end of the inquiry. The Board was aware of this issue and found that the Vision Appraisal appropriately time adjusted the sales figures. Further, the evidence demonstrates that in all other respects the properties used in the Vision Appraisal were significantly more comparable to the Property than those used in the Beacon Appraisal. The Board,

6

as the fact finder, acted properly in evaluating the competing appraisals and deciding that the Vision Appraisal was superior.

In addition to their argument that the Board's decision was unreasonable, Plaintiffs argue that it was the result of unjust discrimination. This argument is predicated on Plaintiffs' assertion that, for all but the smallest parcels, "any waterfront parcels in the [Property's] neighborhood having an acreage of just under 1 acre or more, has a land value roughly between $300,000 and $550,000." (Pls.'s Br. 6.) The three exceptions to this rule are the Property, another property on Long Point Road, and a third property on Cole Hill Road.

To prove unjust discrimination, a taxpayer must show that a valuation system necessarily results in unequal apportionment of taxes among similarly situated properties. *See Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 10, 834 A.2d 916, 919. The Board found that the assessment of the Property was consistent with other properties in the area of similar size and shore frontage. The Board further found that the high assessment of the Property in comparison to other properties in the general area was the result of the Property's "nice location on the western shore of Sebago Lake with excellent elevated views of the lake and to the mountains." (R. at 65.)

Simply stating that the Property is assessed at a value higher than many of the other properties in its geographic vicinity is not enough for Plaintiffs to meet their burden of proving that the record compels a holding that the valuation system used by the Board results in unequal apportionment of taxes. This is particularly true in light of the Board's reasonable explanation for the difference in assessed values. Because of this, and because the record does not compel a

finding that the Board's decision was irrational or so unreasonable that the Property is substantially overvalued, the Board's decision must be affirmed.

Therefore the entry is:

Plaintiffs' 80B appeal is DENIED.

Dated: October _11_, 2006.

Robert E. Crowley
Justice, Superior Court

= COURTS
nd County
ox 287
ıe 04112-0287

SALLY DAGGETT ESQ
JENSEN BAIRD GARDNER & HENRY
PO BOX 4510
PORTLAND ME 04112



= COURTS
nd County
ɔx 287
ıe 04112-0287

RICHARD BRYANT ESQ -
20 YORK ST
PORTLAND ME 04101