STATE OF MAINE                                   SUPERIOR COURT
YORK, ss.                                        Civil Action
                                                 Docket No. AP-19-0018

KEVIN J. HILL,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        DECISION AND ORDER ON
                                        )        PLAINTIFF'S RULE 80B APPEAL
INHABITANTS OF THE TOWN OF              )
WELLS,                                  )
                                        )
                    Defendant.          )

        Kevin J. Hill has appealed pursuant to Rule 80B of the Maine Rules of Civil

Procedure a decision by the Wells Zoning Board of Appeals ("Board") denying his request

for setback variances necessary to allow construction of a residence. The Town of Wells

elected not to defend the appeal. Bradley Hastings, an abutting landowner, intervened

by agreement and filed an opposing brief. The court has reviewed the briefs and the

record, and heard oral argument. For the reasons set out below, the appeal is granted.

## I. Facts

        In 2017 Hill purchased a 7,500-square foot lot in Wells located at 12 Lobster

Lane. The lot is located in the Town's Residential D District and the Shoreland Overlay

District. In light of several factors, including the size and configuration of the lot, the

existence of wetlands on and around the lot, and setback requirements applicable in

these zones, Hill requested two variances from the Town in order to be able to build a

residence thereon.

        First, he requested a variance from the required wetlands setback in the

Shoreland Overlay District. Under Chapter § 145-33(B) of the Town Code, the minimum

setback from the upland edge of a wetland is 75 feet, "which may be reduced to the

1

average of the setbacks of structures within 200 feet of the proposed structure on lots abutting the wetlands but shall not be less than 25 feet . . . ." For purposes of computing the setback average of "lots abutting the wetlands" in this case, the Board relied on a 2012 survey, which determined that the four neighboring residences have wetland setbacks of 37.33 feet, 43.26 feet, 13.48 feet, and 68.00 feet, respectively. The average of these four setbacks is 38.5 feet. Hill seeks a variance to allow the minimum 25-foot setback from the wetlands permitted by the Town Code. This would be nearly two times the setback from the wetlands of one of the neighboring properties.

Second, he requested a variance from the required 20-foot road setback. Chapter § 145-23(G)(2) of the Town Code provides that "[A]ll structures shall be located at least twenty feet from any lot line abutting any street right-of-way . . . ." Hill seeks a variance to build his residence 10 feet back from Lobster Lane.

Because there are wetlands on and proximate to the lot, Hill also was required to obtain approval from the Maine Department of Environmental Protection (DEP) under provisions of state and federal law.[1] In June 2018 he applied to the DEP for a permit "to construct a 1,274 square foot single-family residence with no decks within 11 feet of a wetland" on the lot. In July 2018, the DEP approved his application and issued a permit authorizing construction subject to certain conditions. The permit expressly stated that DEP approval "does not constitute or substitute for any other required state, federal or local approvals nor does it verify compliance with any applicable shoreland zoning ordinances." (4/6/2019 Zoning Board of Appeals Decision (hereinafter, "ZBA Decision") at 3-4; *see also* 7/6/2018 Natural Resources Protection Act Adjacent Activity Water Quality Certification Findings of Fact and Order (hereinafter "DEP Permit") at 7.)

---

[1] Natural Resources Protection Act, 38 M.R.S. §§ 480-A—480-JJ; Section 401 of the Federal Water Pollution Control Act, 33 U.S.C § 1341.

The DEP's July 2018 decision made a number of findings of fact, including, for example, that the proposed construction will not cause unreasonable erosion of soil or sediment; will not unreasonably harm wildlife or habitat; will not unreasonably interfere with the natural flow of surface or subsurface waters; and will not cause or increase flooding on the site or on adjacent properties.

Early on in discussions with the Town, Hill had apparently contemplated requesting a 13-foot wetland setback consistent with his DEP approval. His February 2019 amended application, though, requested a variance to build within 25 feet, which, as is noted above, is the minimum wetland setback permitted by the Town Code. The February 2019 amended application also requested the 10-foot reduction in the required road setback of 20 feet.

A public hearing on the amended application was held on March 18, 2019. The sole question before the Board was whether Hill could demonstrate "undue hardship" in accordance with Chapter § 145-67(A)(3) of the Town Code to support his request for variances.[2] The Board heard testimony from, among others, Hill's attorney; the Town's code enforcement officer; Mr. Hastings, his wife, and their attorney; as well as other neighboring property owners. Also before the Board at this hearing were photographs of neighboring houses, an overhead image with the boundaries of the buildable area superimposed, a survey of the property, and the DEP Permit. Following the presentation of evidence, Board members discussed the application and the evidence presented, and

---

[2] Chapter § 145-67(A)(3) provides that an applicant seeking a variance must establish all of the following: (1) the land in question cannot yield a reasonable return unless the variance is granted; (2) the need for a variance is due to the property's unique circumstances and not general neighborhood conditions; (3) the granting of the variance will not alter the essential character of the locality; and (4) the hardship is not the result of action taken by the applicant or the property's prior owner. This accords with the statutory definition of "undue hardship." *See* 30-A M.R.S. § 4353(4) (2018)

3

then took a straw vote, which unanimously (7-0) would have denied the application. The Board's Vice Chair was given responsibility for drafting proposed findings and conclusions.

At an April 1, 2019 Board meeting, the Vice Chair presented and read into the record the Board's proposed findings of fact and conclusions. The Board Chair called for a separate vote on each of the four factors of the hardship standard. After brief discussion, the Board decided that Hill had met his burden of proof with respect to the first two factors, namely that the land in question cannot yield a reasonable return without the variances (vote of 4-0) and that the need for a variance is due to the unique circumstances of the property (vote of 3-1). With regard to the third and fourth factors, however, the Board determined that Hill had failed to carry his burden to show that granting the proposed variances would not alter "the essential character of the locality" (vote of 4 to 0) and that the hardship was not a result of action taken by him or the prior owner (vote of 4-0).

The April 6th ZBA Decision restated verbatim the "Findings of Fact" and "Conclusions" read into the record at the April 1st hearing, with one minor amendment.[3] As relevant to this appeal, the Board concluded that the "size of the proposed structure

___

[3] The ZBA Decision's "Findings of Fact" identified the applicant and property; found that structures on abutting properties were built prior to adoption of the Town's zoning code, with one renovated since 2004; stated the relevant setbacks used to compute the 38.49-foot "allowed average setback" applicable here, and noted this had increased from 33.49 feet due to the prior owner's removal of a shed prior to sale; recognized that "only a two square-foot area can be built upon without the required setbacks"; and recognized that the applicant had received a Maine DEP permit to construct a 1,274 square foot residence on the lot. The Conclusions set out in the Decision were: (1) the "size of the structure (680 square feet) would make it much smaller than all other homes in the neighborhood"; (2) "the conditions affecting the property were known to the owner in 2017 when he purchased the property"; (3) there are "no known changes to the Code or the environment that would affect the value or conditions of the property"; (4) the "impacts on and by the wetlands are unique for this property in comparison to abutting properties because all the border of the wetlands is inside the area of the lot and virtually all of the wetlands are in the setbacks"; and (5) the DEP permit does not limit or otherwise affect the standards set out in the Town's Code.

4

(680 square feet)" and the "unique" impacts "on and by the wetlands" on this property would alter the essential character of the locality; and that Hill's prior awareness of potential zoning strictures constituted a self-created hardship.

The Board thus denied the requested variances. Hill filed a timely appeal.

## II. Discussion

Rule 80B review of a zoning board's action is deferential, and limited to determining whether a board has committed an error of law, acted arbitrarily, or abused its discretion. *Beal v. Town of Stockton Springs*, 2017 ME 6 ¶ 13, 158 A.3d 768; *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 13, 82 A.3d 148. A board's determination will be sustained if it has a rational basis and is supported by competent record evidence, even where such evidence only implicitly supports its findings. *Driscoll v. Gheewalla*, 441 A.2d 1023, 1029 (Me. 1982). *See also Otis v. Town of Sebago*, 645 A.2d 3, 5 (Me. 1994), citing *McCallum v. City of Biddeford*, 551 A.2d 452, 453 (Me. 1988).

Even though the standard of review is deferential, boards must "take pains to frame their legal conclusions [properly] and to *specify in their decisions the facts upon which they base their conclusions.*" *Driscoll*, 441 A.2d at 1030, n. 5 (emphasis added). Where a board fails to do so, or otherwise commits legal error or abuses its discretion, its determination will not be sustained. Here, the court determines for the reasons set out below that the Board's conclusions are not supported, either by their own written decision or by the record as a whole; and that the Board committed an error of law with respect to its conclusion that the hardship was self-created (factor four) and abused its discretion with respect to its determination that the requested variances would alter the essential character of the locality (factor 3).

5

## A. Self-Created Hardship

An owner's actual or constructive knowledge of applicable zoning ordinances prior to purchase of a property may be considered as a factor in evaluating self-created hardship, but it *cannot be the sole factor* that determines such hardship. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 918 (Me. 1995). The Board stated expressly its reason for determining that Hill failed to prove that the hardship was not self-created: "[T]he conditions affecting the property were known to the owner in 2017 when he purchased the property." (ZBA Decision, at Conclusion 2.) It is clear both from the ZBA Decision itself and the record as a whole that this was essentially the basis for the Board's determination on the fourth factor of the hardship standard.[4] This constitutes error as a matter of law. *Id.*

## B. Essential Character of the Locality

The parties did not offer, nor was the court able to find, any Maine precedent defining or explaining the "essential character of the locality" factor. Hill contends it is self-evident and pertains only to intended use—in other words, because his application seeks setback variances to build a residence in a locality which is zoned residential, then *ipso facto* he has satisfied this standard. He also maintains that building a house smaller in size than neighboring houses likewise does not alter the locality's essential character.

The intended use of a property would appear to be a basic consideration in determining whether granting a variance would alter the "essential character of the

---

[4] Reference is made in the ZBA Decision, and the record, to the removal of a shed from the property by the prior owner, who had divided it and sold the lot to Hill.  had removed a shed and thereby increased the minimum setback by five feet, from 33.49 to 38.5 feet. Removal of the shed had a *de minimis* impact on the relevant setback (increasing the calculated average from 33.49 feet to 38.5 feet), which does not appear material to the Board's ultimate conclusion.

6

locality." The question presented here, however, is whether it is the exclusive, or only, consideration that a zoning board may employ in evaluating this factor in the hardship test. Were that the case, this factor would be duplicative of and co-extensive with the more fundamental determination of whether a particular use is allowed at all—as a permitted or conditional use, for example—in a given zone under a town's zoning ordinance. To have independent meaning and significance in the specific context of a variance request, the "essential character of the locality" factor must be interpreted more broadly to encompass considerations beyond mere use, such as, for example, scale, dimension, and even, perhaps, overall appearance with respect to existing uses in the relevant locality.[5] The court concludes that the Board had discretion to evaluate considerations beyond use. The exercise of that discretion, however, must be supported by substantial evidence and may not be arbitrary or capricious.

In this case, even members of the Board expressed uncertainty as what "essential character of the locality" means. One Board member directly urged his fellow members to discuss and define this standard more clearly.[6] Despite his request, and following a

---

[5] *See e.g., Infrah v. Utschig*, 98 N.Y.2d 304, 774 N.E.2d 732 (2002) (upholding denial of variance request where zoning board of appeals concluded modernist residence would aesthetically conflict with architecture of nearby homes and building on substandard lot would disturb perception from the street of larger lots); *Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan*, 953 P.2d 1315, 1333–34 (Haw. 1998) (holding no abuse of discretion by board denying height variance on "essential character" grounds where proposed building dwarfed surrounding structures—even though the appellant argues that the neighborhood's character was a "hodge-podge of mixed uses" that "welcome[d] diversity."). It is noted, however, that in each of these cases and unlike the instant case, the "essential character" factor was not the sole, dispositive issue; rather the applicant also failed to satisfy other elements of the hardship standard.

[6] At the March 18th hearing, one Board member remarked: *"Some day we got to define that* [the essential character standard] *I guess* because—are you talking about the neighborhood, all of Drake's Island, the abutters." (Tr. March 8, 2019, at 29.) (Emphasis added.) The same Board member, who had already drafted the Board's Decision that was read into the record on this same occasion, said at the April 1st hearing:

I've been giving this a lot of thought as I've written [the draft Decision] and uh
When we say alter the essential character it depends upon what we are looking at
– you know the kind of house, the size of house, or the setback and the setback
is the important thing right here and now – set back from the wetlands and *it*

7

brief and limited discussion, the Board Chair pressed for determination of the question. The Board concluded that Hill failed to establish that the variances requested would not alter the essential character of the locality on the basis of (i) the size of the structure and (ii) the resulting wetlands impact.

As to the former, the Board concluded—erroneously—that "the *size of the structure (680 square feet)* would make it *much smaller than all other homes* in the neighborhood." (ZBA Decision, at Conclusion #1.) (Emphasis added.) The ZBA Decision itself makes no factual finding that the structure, when built, would be 680 square feet. Rather, this is set forth as a dispositive "conclusion" without a supporting finding of fact. In addition, the record as a whole also does not provide such support. At both the March 18th public hearing and the April 1st public meeting of the Board there was discussion about the size of the structure. In the course of these discussions it was recognized that this structure would be smaller in size, and would be elevated to allow for parking on the ground level.[7] Hill's application, though, describes a proposed structure with a 680 square-foot *footprint*, not a *total size* of 680 square feet. It is further evident from the record that the proposed structure was likely going to be multiple stories, with the ground floor serving essentially as a garage, with multiple stories above. There was no blueprint, building plan, or building sketch in the record—certainly

---

bothers me that one of the others is closer than this would be and uh all of the are less than the desired 75 feet. So you know what I'm saying is maybe we need a few words among ourselves of what we consider the prioritized essential character of the neighborhood for the locality would be . . . .

(Tr. April 1, 2019, at 3-4.) (Emphasis added.)

[7] The elevation of the building to permit parking underneath on the ground level was necessitated by both flooding and off-street parking requirements. One Board member who voiced a concern characterized this a house on "stilts". Again, no blueprints, building plans, or sketches of the structure were presented. Moreover, one other neighbor also described her house as built on stilts. (*See* Tr. March 18, 2019, at 23-24). This consideration alone would support a conclusion that granting the variance would alter the essential character of the locality.

8

nothing that supports the conclusion reached by the Board that the total size of the residence was going to be 680 square feet.

Moreover, the conclusion that the structure would be "much smaller than *all other homes* in the neighborhood" also is not supported by the record. Photographs in the record show a number of the surrounding homes as larger in size—but not all; and there is no specific evidence as to the dimensions of any of the houses. Several photographs depict at least one additional smaller home in the immediate vicinity. A Board member unfamiliar with the area pointed this out after examining the photographs.[8] It is unclear from the record whether or to what extent other members were, in fact, familiar with this particular neighborhood. The court concludes that the Board abused its discretion in determining that the proposed structure would be 680 square feet in size and would be "much smaller" than "all" other homes in the neighborhood. (Emphasis added.)

With respect to wetlands impact, the Board concluded that "the *impacts on and by the wetlands are unique for this property* in comparison to abutting properties because "the border of the wetlands is inside the area of the lot and virtually all of the wetlands is in the setbacks." (Decision, at Conclusion #4.) There are two parts to this conclusion. First, that there are (presumably negative) "impacts on and by the wetlands" unique to this property; and second, the impact is due to the presence of wetlands "inside the area of the lot." Neither is supported by the ZBA Decision itself or the record as a whole.

---

[8] "It's a small house tucked into the corner. I don't know about the rest of the. [sic] . . . . *I probably should have taken a ride over there. . . . How am I supposed to know if there are any other houses in the neighborhood. . . .* What we were given—pictures in the pictures and the houses I can see they all look pretty substantial. They are not these little cookie cutter things. [But] *I see one way in the back that's kind of smaller . . . ."* (Tr. March 18, 2019, at 30-31.) (Emphasis added.)

9

None of the five enumerated Findings of Fact in the ZBA Decision find adverse impacts on the wetlands.[9] Moreover, this conclusion is not supported by substantial record evidence. The 2018 DEP Permit determined that construction of a residence on the lot would not adversely impact the wetlands—even using the 11-foot wetlands setback that was requested at the time. It further determined that there would be no adverse effects with respect to, among other things, drainage, flooding, freshwater plant habitat, or wildlife habitat. While one person who spoke at the March 18th meeting raised generalized concerns about wetland flooding,[10] this does not establish that granting what is effectively a 13-foot reduction in the minimum 38.5-foot setback allowed for that lot would alter the essential character of the locality.

The Board's heavy reliance on the fact that wetlands are found on the lot itself is misplaced. The Town Code does not prohibit building on a lot with wetlands. Moreover, if the upland edge of the wetlands were 13.5 feet further away on this lot, then Hill would not need a variance in the first instance. Notwithstanding the Board's expressed concern about reducing the average wetland setbacks, it is difficult to understand how granting this variance would alter the essential character of the locality, particularly when one of the neighboring properties has a setback of 13.48 feet.

The emphasis on the existence of wetlands on the lot itself highlights an attribute "unique for this property", and would appear to conflict with the Board's earlier

---

[9] The findings of fact set out in the ZBA Decision specified: (i) the wetland setbacks of four abutting properties within 200 feet of the lot in question, as well as the average setback of the four; (ii) one of the abutting properties has a smaller setback (13.48 feet) from the wetlands than the requested setback of 25 feet of the applicant's residence; (iii) the requested setback is smaller than the average setback (38.49 feet); (iv) without the variance only a two square-foot area can be built upon; and (v) prior removal of a shed increased the average setback from 33.49 to 38.5 feet. (Decision, at Findings of Fact, #3, #4.)

[10] She read two letters, one from an abutter who described "significant local flooding all around the property from a high full moon tide and a very wet November," and another that stated "the property is prone to significant flooding." (Tr. March 18, 2019, at 20, 21.)

10

determination that Hill had demonstrated that his need for the variance was due to the "unique circumstances of the property and not to the general conditions of the neighborhood."

Finally, the record does not support the conclusion that "virtually all of the wetlands is within the setbacks." The setback requested is from the upland edge of the wetlands, which is clearly depicted in the Location Plan that is part of the record.

### III. Conclusion and Order

In sum, the court concludes as follows. The Board erred as a matter of law with respect to applying the self-created hardship factor. The Board abused its discretion with respect to the essential character factor in that its conclusions were not sufficiently supported by either its written decision or by the record as a whole.

Accordingly, for the reasons set out above is hereby ordered and the entry shall be: "Appeal GRANTED. Decision of the Town of Wells Zoning Board of Appeals is REVERSED."

SO ORDERED

Dated: April 2, 2020

Wayne R. Douglas
Justice, Superior Court

11

**ALFSC-AP-2019-18**

**APPELLANT'S ATTORNEY**

ALAN SHEPARD ESQ
SHEPARD & READ
93 MAIN ST
KENNEBUNK ME 04043

**APPELLEE'S ATTORNEY**
LEAH RACHIN ESQ
BERGEN & PARKINSON LLC
62 PORTLAND RD SUITE 25
KENNEBUNK ME 04043

**INTERVENOR'S ATTORNEY**
ARTHUR DUMAS ESQ
51 COTTAGE ST
SANFORD ME 04073